IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

GRETA DEANS,

 Plaintiff,

v.

THERMO FISHER SCIENTIFIC, INC.,

 Defendant.

)
)
)
)
)
)
)
)
)

No. 2:24-cv-03021-SHL-tmp

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Thermo Fisher Scientific, Inc., filed its Motion for Summary Judgment on March 13, 2026.  (ECF No. 29.)  Plaintiff Greta Deans responded on May 1.  (ECF No. 34.)  Thermo Fisher replied one week later.  (ECF No. 36.)

For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**.  The Motion is **GRANTED** as to Deans' claims based on the ADA, Title VII hostile work environment, and Title VII retaliation.  Summary judgment is **DENIED** as to Deans' Title VII discrimination claim.

**BACKGROUND[1]**

Thermo Fisher sells equipment for scientific research.  (ECF No. 30 at PageID 447–48.)  In August 2021, it hired Deans as a supervisor at its Memphis distribution warehouse.  (ECF No. 34-1 ¶ 8.)  Deans is a married homosexual woman and a military veteran diagnosed with PTSD.  (ECF No. 36 ¶¶ 2–3.)  She brings claims for (1) failure to accommodate her disability under the Americans with Disabilities Act ("ADA"), (2) Title VII sex discrimination, (3) Title VII hostile

_____

[1] Unless otherwise stated, the following facts are undisputed.

work environment, and (4) Title VII retaliation.  (ECF No. 1 ¶ 42–88.)  The facts relevant to the alleged ADA violations and to the alleged Title VII violations are outlined separately below.

## I.        Alleged ADA Violations

Because certain noises in the distribution center triggered her PTSD, Deans sought accommodations for her disability on three occasions.  First, beginning in August 2021, she requested that her workstation be moved away from a noisy conveyor belt.  (ECF No. 34-1 ¶¶ 12, 15.)  She directed her request at senior manager Zrenda Coleman, with whom Deans had previously worked and who was familiar with Deans' condition.  (Id. ¶ 13.)  Coleman responded that Human Resources ("HR") would need to approve Deans' request for the accommodation.  (ECF No. 34-1 ¶ 16.)  According to Deans, she submitted a proposal to move into an empty office.  (ECF Nos. 1 ¶ 82; 34-1 ¶ 16.)  But her proposal was denied because, as she was told, other supervisors would have resented the move as preferential treatment.  (ECF Nos. 1 ¶ 82; 34-1 ¶ 16.)

In the meantime, Deans began using noise-cancelling headphones near the conveyor belt.  (ECF No. 34-1 ¶ 17.)  At first, she was told that she could not wear them in that area, though the reason is disputed.  (Id. ¶ 18.)  Thermo Fisher asserts that the headphones posed a safety risk; according to Deans, the safety manager was "worried" she could be struck by a forklift, even though there were no forklifts operating in that work area.  (Id.)  Shortly thereafter, however, she was permitted to continue using the headphones as an accommodation for her PTSD.  (Id. ¶ 19.)

Deans' second accommodation request came in 2022, after she was moved to a new workstation near a garbage door.  (Id. ¶ 21.)  She told Thermo Fisher that the noise in this area also caused PTSD symptoms, so the company found a quieter spot toward the back of her work area, which Deans agreed worked well.  (Id. ¶ 22–23.)

2

Her third request was in October 2023, when jackhammering outside the building created a new noise in her workstation.  (Id. ¶ 25.)  As an accommodation, Coleman allowed Deans to work in the front office until the jackhammering stopped.  (Id. ¶ 29.)

## II.    Alleged Title VII Violations

Deans avers that, from August to December 2021, she experienced harassment based on her sexual orientation.  (Id. ¶ 33.)  In October 2021, for example, Deans realized that her wife was not receiving the company insurance benefits she was entitled to.  (Id. ¶ 8; ECF No. 34-1 ¶ 30.)  After six months of effort, including opening as many as a dozen IT tickets and submitting a copy of their marriage certificate three times, Deans finally secured those benefits in April 2022.  (ECF Nos. 34-1 ¶ 32; 36 ¶ 8.)

However, about two weeks after she had first told Allison Hatfield in HR that her wife lacked insurance benefits, Deans began to receive harassing and inappropriate comments from other employees.  (ECF No. 36 ¶ 5.)  One male employee questioned her sexual orientation, saying, "Well, I heard you were married to a woman.  Are you sure?  You know, why don't you go out to dinner with me?"  (Id.)  Others asked Deans how long she had been dating women, what she was getting her wife for Valentine's Day, and other intrusive questions.  (Id.)  After Deans reported these comments to Thermo Fisher, Hatfield promptly instructed these employees to stop.  (ECF No. 34-1 ¶ 36.)  Although the employees under Deans' supervision stopped making such comments, the Parties disagree about whether all employees stopped.  (Id. ¶ 35.)  Deans testified that "the banter kept going" from other employees outside her direct control.  (ECF No. 29-2 at PageID 262.)

On October 13, 2023, one week before her ultimate termination, Deans sent a text message to her team of subordinates, scheduling a meeting for October 16.  (ECF No. 34-1 ¶ 38.)

In the message, Deans wrote, "Some of yall think I'm a joke, well the jokes on you." (Id. ¶ 39.)
One of her direct reports, Willie Burks, replied to the whole group, questioning why Deans had
called a meeting to discuss issues that he believed applied only to him. (Id. ¶ 39.) Deans sent a
message back to the whole group, writing, "I tell you what to do, if you don't like it quit!!
Insubordination is another write up – Adult." (Id. ¶ 40.)

On the morning of October 16, Burks arrived for the meeting before the rest of the team.
(ECF No. 36 ¶ 10.) While waiting for the meeting to begin, he glared at Deans and flared his
nostrils, but Deans did not engage with him. (Id.) She then opened the meeting by telling the
team about herself, including that she was a military veteran. (ECF No. 34-1 ¶ 41.) When Deans
began telling the team that they should accept information when she gives it to them, Burks
began cursing at her. (Id. ¶ 42.) Deans cursed back at Burks. (Id. ¶ 44.) Burks began
threatening to fight Deans. (Id.)

The Parties disagree on the content of Burke's outburst; for her part, Deans contends,
based on the declaration of team member Sharbie Jackson, that Burks insulted Deans for her
sexual orientation, calling her and others "bitches" and "gay hoes," and declared, "bitch, I kick
your mutherfucking ass," and, "You think you're a man. I'm going to fight you like a man."
(ECF No. 36 ¶ 13.) Thermo Fisher, while not disputing these statements, objects to hearsay.
(Id.) It further argues that the contents of the insults are not at issue and are thus immaterial.
(Id.)

The Parties also disagree about what Deans did next. According to Thermo Fisher,
Deans walked toward Burks, who was backing away, and told him to leave the building. (ECF
No. 34-1 ¶ 43.) As Deans continued to move toward Burks, one of Deans' coworkers actively
attempted to pull Deans away. (Id. ¶ 45.) According to Deans, however, she did not walk

4

toward Burks but, standing approximately two feet from him, pointed with her tablet toward the building's exit. (Id. ¶ 43.) And Deans states that her coworker Sharbie Jackson "only attempted to pull Plaintiff away . . . due to the discriminatory comments made by Mr. Burks." (Id. ¶ 45.) After Burks left, Deans told the remaining employees, "If you threaten my life, I'm going to defend myself." (Id. ¶ 46.)

Following this altercation, manager Robert Cunningham gathered statements from employees who were present. (Id. ¶ 47.) Finding that the first several statements were unfavorable to Deans, Cunningham recommended that Deans find some coworkers from the meeting who would give statements favorable to her. (Id. ¶ 48.) But Deans declined to ask anyone for a statement because she wanted the employees to give statements "in their own words" and, according to Deans, she felt that it would be unfair to the process to solicit favorable statements. (Id. ¶ 49.) Deans submitted her own statement of events to Cunningham. (Id. ¶ 51.) The Parties disagree on how many total statements were collected, with Thermo Fisher counting eleven and Deans asserting that the company interviewed only eight employees. (Id. ¶¶ 53, 69.)

After its investigation into the October 16, 2023 incident, Thermo Fisher concluded that Deans had told her subordinates that she was not scared of them, and had told them to "knuck if you buck," which the company understood to be slang for fighting. (Id. ¶ 57.) It determined that a subordinate could interpret this language, when spoken by a supervisor, as threatening. (Id. ¶ 56.) Four employees recalled Deans saying that her subordinates could "meet [her] outside," although Deans states that these four were biased, being friends of Burks and having been previously disciplined by Deans. (Id. ¶ 58.) Multiple statements agreed that Deans had walked toward Burks while directly addressing him when the conversation became heated. (Id. ¶

5

60.)  One employee expressed fear that Deans would retaliate against her for making a statement. (Id. ¶ 61.)

Deans met with Mary Graessle, Senior Manager of Employee Relations, who was responsible for reviewing witness statements and conducting any additional investigation.  (Id. ¶ 62.)  During the meeting, Deans told Graessle that she believed the employees' statements should be discounted because they were friends of Burks and were all on final write-ups.  (Id. ¶ 63; ECF No. 36 ¶ 25.)  But she did not tell Graessle that she believed any employee made things up about her because of her sexual orientation.  (ECF No. 34-1 ¶ 65.)  Additionally, Deans does not know whether the employees who provided the statements were aware of her mental health background.  (Id. ¶ 64.)

Having considered Deans' statement and all employee statements, the Employee Relations team recommended firing both Deans and Burks based on behaviors amounting to a threat of violence under Thermo Fisher's Anti-Workplace Violence Policy.  (Id. ¶¶ 67, 70.) Cunningham told Deans that she was being terminated due to her violations of the Anti-Violence Policy, and mentioned nothing about her sexual orientation, disability, or accommodation requests.  (Id. ¶¶ 72–73.)  On April 16, 2024, Deans filed a charge of discrimination with the EEOC.  (ECF No. 30 at PageID 460.)

III.    Alleged Comparators

Deans contends, and Thermo Fisher disputes, that other employees violated the Anti-Violence Policy but were not fired.  One such comparator is Tammye Thomas.  (ECF No. 34-1 ¶ 74.)  Deans asserts that she heard Thomas and Cleortha Sumners fighting in late 2021, and then witnessed them being pulled apart.  (Id. ¶ 75.)  But Thermo Fisher contends that Deans did not

6

personally witness Thomas violating the policy. (Id. ¶ 75.) Further, Deans concedes that she does not know whether Thomas received any discipline. (Id. ¶ 76.)

A second comparator is Martha Mason, a supervisor whom, Deans asserts, she saw tell an employee, "I can meet you outside," language similar to what Deans herself allegedly said in her altercation with Burks. (Id. ¶ 78.) Mason received a verbal warning and not termination. (ECF No. 36 ¶ 21.) According to Thermo Fisher, however, Mason was engaged only in verbally aggressive behavior without a confirmed threat of violence. (ECF No. 34-1 ¶ 78.)

A final comparator is Joseph Kossen, a maintenance supervisor. (Id. ¶ 79.) Deans heard that, after she had left the company, Kossen threatened Ken Harper and violently slammed Harper's door. (Id. ¶ 80.) Kossen was not fired. (ECF No. 36 ¶ 24.) But Thermo Fisher argues that Deans lacks first-hand knowledge of the incident and disputes that Kossen made any actual threat. (ECF Nos. 34-1 ¶ 80; 36 ¶ 23.)

## IV.    Claims

Deans brings one ADA claim, alleging that "at no point did the Company properly accommodate [her] and allow her to work in an environment that would not place her at risk of suffering from PTSD symptoms." (ECF No. 1 at PageID 11.) She states that the lack of accommodations caused "a severe breakdown due to PTSD symptoms in September 2023." (Id.) She also contends that Thermo Fisher "failed to properly engage in an interactive process to find accommodations" for her. (Id. at PageID 12.)

She also brings three claims under Title VII. First, Deans alleges Title VII sex discrimination, arguing that (1) she was subjected to "inappropriate and harassing behavior and comments" from employees; (2) she was fired on October 20, 2023, after seeking insurance for her wife eighteen months earlier; and (3) she was terminated immediately after allegedly

7

violating the Anti-Violence Policy, even though other employees had received only written warnings as discipline.  (ECF No. 1 at PageID 6–7.)

Second, Deans alleges a hostile work environment under Title VII, arguing that she was subjected to inappropriate comments from employees and, specifically, to a "hate-filled altercation" with Burks on October 16, 2023, in which he called her "gay bitch" and "lesbian motherfucker" and declared that he would "fight [her] like a man!"  (ECF No. 1 at PageID 8.)  Deans asserts that she "made numerous complaints to her managers and Human Resources regarding the conduct, thus making Defendant liable."  (Id.)

Third, Deans alleges Title VII retaliation, arguing that, after she had made multiple complaints about the harassment, her wife's delayed insurance benefits, and Burks' October 16 tirade, she was fired "[w]ithin days," on October 20, 2023, under the company's Anti-Violence Policy.  (ECF No. 1 at PageID 9.)  She asserts that she "engaged in protected activity by reporting discrimination to Defendant" before Thermo Fisher fired here, creating a reasonable inference "of a causal connection between her complaints and her termination."  (Id.)

Thermo Fisher seeks summary judgment on all four claims.  (ECF No. 29.)

## APPLICABLE LAW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if "proof of that fact would establish or refute an essential element of the cause of action or defense."  Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012) (citing Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984)).  Facts in the record and reasonable inferences that can be drawn from those facts are to be viewed in the light most

8

favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

574, 587 (1986) (citation modified).

Once a properly supported motion for summary judgment has been made, the party

opposing summary judgment must show that there is a genuine dispute of material fact by

pointing to evidence in the record, or argue that the moving party is not entitled to judgment as a

matter of law.  Fed. R. Civ. P. 56(a), (c)(1).  A genuine issue for trial exists if the evidence would

permit a reasonable jury to return a verdict for the non-moving party.  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986).  "[A] plaintiff's testimony [is] itself sufficient to create a

genuine issue of material fact."  Moran v. Al Basit LLC, 788 F.3d 201, 206 (6th Cir. 2015) (citing

Harris v. J.B. Robinson Jewelers, 627 F.3d 235, 239 (6th Cir. 2010)).  This is true "so long as the

[testimony] is 'made on personal knowledge, set[s] out facts that would be admissible in

evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated.'"

Lamb v. Kendrick, 52 F.4th 286, 296 (6th Cir. 2022) (quoting Fed. R. Civ. P. 56(c)(4)).  But

when "the evidence consists of one party's affidavit [or deposition] against another's, there is no

rule of procedure that allows federal courts to disregard the plaintiff's testimony simply because

it is self-serving."  Id.

Although the court views all evidence and factual inferences in the light most favorable

to the non-moving party, "the mere existence of some alleged factual dispute[s] between the

parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no genuine issue of material fact."  Id. at 247–48.  The court's role is

not to weigh evidence or assess the credibility of witnesses, but simply to determine "whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is so

9

one-sided that one party must prevail as a matter of law." Kroll v. White Lake Ambulance Auth.,

763 F.3d 619, 623 (6th Cir. 2014) (citation modified) (quoting Anderson, 477 U.S. at 251–52).

## ANALYSIS

Deans asserts claims of (1) failure to accommodate under the ADA; (2) Title VII sex

discrimination, (3) Title VII hostile work environment, and (4) Title VII retaliation. (ECF No. 1

¶ 42–88.) Each claim is considered below.

### I.   ADA Failure to Accommodate Claim

Deans argues that Thermo Fisher failed to accommodate her disability. (ECF No. 1 at

PageID 11.) To establish a prima facie failure-to-accommodate claim, a plaintiff must show that

(1) she was disabled, (2) she was otherwise qualified for her position with or without a

reasonable accommodation, (3) her employer had reason to know of her disability, (4) she

requested a reasonable accommodation, and (5) her employer failed to provide the necessary

accommodation. Brumley v. UPS, 909 F.3d 834, 839 (6th Cir. 2018). The plaintiff "bears the

initial burden of proposing an accommodation and showing that the proposed accommodation is

objectively reasonable." Johnson v. Cleveland City Sch. Dist., 344 F. App'x 104, 111 (6th Cir.

2009) (citation omitted). Under the ADA, an employer must engage in an "informal, interactive

process" with the employee to "identify the precise limitations resulting from the disability and

potential reasonable accommodations that could overcome those limitations." Kleiber v. Honda

of Am. Mfg., Inc., 485 F.3d 862, 871 (6th Cir. 2007) (quoting 29 C.F.R. § 1630.2(o)(3)).

Thermo Fisher argues that it is entitled to summary judgment on Deans' ADA claim

because it accommodated her when reasonable, and because the first two incidents she alleges

are time-barred. (ECF No. 30 at PageID 458–61.)

### A.    *Reasonable Accommodations*

Thermo Fisher contends that it responded to each of Deans' three requests with reasonable accommodations—first allowing her to use noise-canceling headphones, then relocating her workstation, and finally moving her temporarily to the front office.  (Id. at PageID 458–59.)  Deans responds that the process Thermo Fisher followed "bore no resemblance to an interactive process" as required by the ADA.  (ECF No. 34 at PageID 513.)  She contends that the company should have moved her to vacant office space instead and should not have pushed back on her use of noise cancelling headphones.  (Id.)

Under the ADA, an employer is required to provide a qualified employee with "a reasonable accommodation—not the best accommodation or even her preferred accommodation."  B.S. v. Carter Cnty. Bd. of Educ., No. 24-5045, 2025 WL 764610, at *2 (6th Cir. Mar. 11, 2025) (citation modified).  "A plaintiff has no right to make the employer provide a particular accommodation 'if another reasonable accommodation is instead provided.'"  Turner v. Fleming Cos., No. 98-5065, 1999 WL 68580, at *5 (6th Cir. Jan. 21, 1999).

Here, Deans fails to raise a genuine dispute of material fact as to whether Thermo Fisher accommodated her disability following an interactive process.  In her first request for accommodations, it is undisputed that the company, after initially denying her request to use noise-cancelling headphones, later allowed her to use them.  In her second request, the company moved her workstation to a location that she agreed was suitable.  And, in her third request, the company moved her to the front office to escape the noise of jackhammering.

Although Deans disagrees that this process was interactive, it indeed bore the hallmarks of interaction—direct communication between the parties about Deans' limitations and Thermo Fisher's offers to accommodate her.  See Jakubowski v. Christ Hosp., Inc., 627 F.3d 195, 203

11

(6th Cir. 2010) (finding that a defendant "participated in the interactive accommodation process in good faith" when it "met with [plaintiff], considered his proposed accommodations, informed him why they were unreasonable, offered assistance in finding [an alternative], and never hindered the process along the way"). And, although Deans asserts that she would have preferred different accommodations, she has failed to show that any of the reasonable accommodations she received was unsatisfactory. See id. ("If an employer . . . offers a reasonable counter accommodation, the employee cannot demand a different accommodation.").

This finding alone supports granting Thermo Fisher summary judgment on Deans' failure-to-accommodate claim.

### B.       ADA Claim Partially Time-Barred

Further, Thermo Fisher argues that Deans' ADA claim is time-barred as to her first two requests for accommodation, which occurred in 2021 and 2022, "far more than 300 days before her April 2024 EEOC Charge." (ECF No. 30 at PageID 459.) It also asserts that Deans cannot save these aspects of her claim under a continuing violation theory "because each request for an accommodation is a discrete act, not an ongoing violation." (ECF No. 35 at PageID 568 n.2 (citing Wilson, 704 F. Supp. 3d at 835).) But Deans argues that her ADA claim is not barred by the statute of limitations because "the continuing violation doctrine applies to cases involving 'a longstanding and demonstrable policy of discrimination.'" (ECF No. 34 at PageID 512 n.3 (quoting Sharpe v. Cureton, 319 F.3d 259, 268 (6th Cir. 2003)).)

"[A] claimant who wishes to bring a lawsuit claiming a violation of the ADA must file a charge of discrimination with the EEOC within 300 days of the alleged discrimination." Stover v. Amazon.com, LLC, 442 F. Supp. 3d 971, 982 (E.D. Ky. 2020). Under the continuing violation doctrine, "a plaintiff is entitled to have the court consider all relevant actions allegedly

12

taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." Sharpe, 319 F.3d at 267 (citation omitted).  To establish a continuing violation "involving a longstanding and demonstrable policy of discrimination," a plaintiff must show by a preponderance of the evidence "that some form of intentional discrimination against the class of which plaintiff was a member was the company's standing operating procedure." Id. at 268–69.

Here, Deans has "failed to allege class-wide discriminatory action" as required to make out a continuing violation. Id. at 269.  She does not demonstrate "the existence of a discriminatory policy that affects anyone other than [her]self, let alone a class of people." Stover, 442 F. Supp. 3d at 983 (citing Sharpe, 319 F.3d at 269).  Thus, each of her requests for accommodation is a discrete act, and the first two incidents alleged from 2021 and 2022 are barred by the statute of limitations.

Because Deans' allegations of failure to accommodate are time-barred, except for her final October 2023 request to be removed from the noise of jackhammers, and because the company provided Deans with reasonable accommodations in that incident (as well as both previous incidents), she fails to raise a genuine dispute of material fact and the company is entitled to judgment as a matter of law on her ADA claim.  Thus, Thermo Fisher's Motion for Summary Judgment as to the ADA claim is **GRANTED**.

## II.     Title VII Sex Discrimination Claim

Deans alleges sex discrimination under Title VII based on her coworkers' inappropriate comments; the delay in her wife's insurance benefits; and her swift termination for allegedly violating the Anti-Violence Policy, when similarly situated straight employees received more lenient treatment.  (ECF No. 1 at PageID 6–7.)

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment" based on the "individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  To state a prima facie claim of Title VII sex discrimination, a plaintiff must show (1) she is a "member of a protected class," (2) she "suffered an adverse employment action," (3) she was "qualified for the position," and (4) "a person outside the protected class was treated more favorably than" she.  Braithwaite v. Timken Co., 258 F.3d 488, 493 (6th Cir. 2001).  This same framework applies to claims of discrimination based on sexual orientation.  Bostock v. Clayton County, 590 U.S. 644, 683 (2020).

Thermo Fisher argues that it is entitled to summary judgment on Deans' sex discrimination claim because she cannot point to similarly situated employees outside her protected class who were treated more favorably than she.  (ECF No. 30 at PageID 459.)  Out of the three comparators, according to Thermo Fisher, Deans "acknowledges that she does not have firsthand knowledge of any incidents involving Ms. Thomas or Mr. Kossen."  (Id. at PageID 460.)  As to Thomas specifically, Thermo Fisher argues that Deans "only assumes violence occurred because [she saw] Ms. Thomas and another employee being pulled apart."  (Id.)  And as for the third comparator, according to the company, Deans' "only support for her assertion that Martha Mason is a proper comparator is inadmissible hearsay."  (ECF No. 35 at PageID 563.)  Thermo Fisher adds that the fact that it fired Burks, a straight male, along with Deans "weighs heavily against [her] claim of sex discrimination."  (ECF No. 30 at PageID 460.)

Finally, the company argues that, to the extent that Deans includes the delay in her wife's health insurance as an instance of sex discrimination, that incident is time-barred, having occurred over two years before the filing of Deans' EEOC charge.  (Id.)  In any event, according

14

to the company, Deans has not shown that the delay was due to her sexual orientation—or even that the delay was the fault of Thermo Fisher in the first place, rather than the fault of the health insurance company.  (Id. at PageID 461 n.2.)

In response, Deans first argues that she never made a threat of violence.  (ECF No. 34 at PageID 503.)  But even if she did, she contends that she has successfully identified comparators who were not fired for similar conduct.  (Id.)  In the case of Tammye Thomas, Deans asserts that she witnessed her violating the Anti-Violence Policy when Deans "first heard the altercation then witnessed [Thomas and a coworker] having to be pulled apart."  (Id.)  And, as to Martha Mason, Deans asserts that Mason did in fact threaten employees and supervisors "by asking them to meet her outside."  (Id.)  Finally, concerning the statute of limitations, Deans argues that she is not barred from raising the company's delay in providing benefits to her wife because of the continuing violation doctrine.  (Id. at PageID 508 n. 2.)

Deans successfully raises a genuine dispute of material fact as to whether one of the three comparators, Martha Mason, was treated better than she.  Although Thermo Fisher argues that Deans' knowledge of Mason's conduct is inadmissible hearsay, Deans asserts that she personally overheard Mason tell another employee, "I don't fight at no job.  We can go outside."  (ECF No. 29-2 at PageID 347.)  Nevertheless, Mason, who is not openly homosexual, according to Deans, is still employed at the company.  (ECF Nos. 1 ¶ 39; 29-2 at PageID 347.)

Aside from a hearsay objection, the company "does not deny [Deans' allegation], has submitted no evidence to refute it, and has made no statements regarding [whether Mason was disciplined]." See Wright v. Murray Guard, Inc., 455 F.3d 702, 707 (6th Cir. 2006).  Instead, it seeks to differentiate Deans' and Mason's conduct by arguing that Mason "engaged only in verbally aggressive behavior without a confirmed threat of violence," unlike Deans.  (ECF No.

15

34-1 ¶ 78.)  But Deans points out that Mason's statement was substantially similar to her own statement that the employees on her team could "meet [her] outside," which Thermo Fisher interpreted as a threat of violence.  (ECF No. 29-7 at PageID 445–46.)  Further, Thermo Fisher concedes that it only issued Mason a verbal warning.  (ECF No. 36 ¶ 21.)  Thus, viewing the facts in the light most favorable to Deans, the Court must credit Deans' contention that Mason was treated better than she.

As for Tammye Thomas and Joseph Kossen, however, Deans does not raise a genuine issue of material fact.  First, as to Thomas, although Deans asserts that she witnessed her violate the Anti-Violence Policy, she concedes that she does not know whether Thomas received any discipline.  (ECF No. 34-1 ¶ 76.)  Thus, she cannot show that Thomas was treated more favorably because she cannot show how she was treated.  This allegation, viewed in the light most favorable to Deans, does not establish a viable comparator.

Second, as to Kossen, because Deans only heard of his alleged conduct after her termination, she lacks personal knowledge as to whether he was treated better.  A party may object to reliance on material cited by an opponent because it "cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  Here, unlike in Mason's case, Deans admits that she lacks firsthand knowledge of Kossen's conduct.  (See ECF No. 29-2 at PageID 351:19–22 ("I didn't see [the Kossen incident]. . . .  That happened [in] 2023.  It was post termination.").)  Thus, even with the facts viewed in the light most favorable to Deans, she fails to cite admissible evidence to create a dispute of material fact as to this comparator.  Thermo Fisher's hearsay objection is well-taken.

Additionally, the company's argument that its termination of Burks along with Deans "weighs heavily against [her] claim of sex discrimination" (ECF No. 30 at PageID 460) is

16

unavailing. Burks and Deans may have received the same treatment in this instance, but that has no bearing on whether Deans can identify a valid comparator under Title VII.

Finally, Deans' allegation of sex discrimination in the delay of insurance benefits is time-barred. Because it is a discrete act independent of Deans' later termination, it cannot be saved by the continuing violation doctrine. See Wilson v. Ohio Dep't of Mental Health & Addiction Servs., 704 F. Supp. 3d 820, 834 (S.D. Ohio 2023), aff'd, No. 23-3994, 2024 WL 3814047 (6th Cir. Aug. 14, 2024) ("[T]he continuing violations doctrine does not permit recovery for discrete acts of discrimination that occur outside the statutory period . . . .").

Because Deans raises a dispute of material fact as to one comparator, Thermo Fisher's Motion for Summary Judgment as to her Title VII sex discrimination claim is **DENIED**.

## III.    Title VII Hostile Work Environment Claim

Deans also alleges a hostile work environment under Title VII, arguing that she was subjected to inappropriate comments from employees and, specifically, to a "hate-filled altercation" with Burks on October 16, 2023. (ECF No. 1 at PageID 8.)

To make out a Title VII hostile work environment claim based on sexual harassment, an employee must show that "(1) she was a member of a protected class; (2) she was subjected to unwelcome . . . harassment; (3) the harassment complained of was based on sex; (4) the charged sexual harassment created a hostile work environment; and (5) the employer is liable." Schlosser v. VRHabilis, LLC, 113 F.4th 674, 683 (6th Cir. 2024) (quoting Randolph v. Ohio Dep't of Youth Servs., 453 F.3d 724, 733 (6th Cir. 2006)).

Under Title VII, a hostile work environment is one where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to

17

alter the conditions of the victim's employment and create an abusive working environment,"

objectively and subjectively.  Randolph, 453 F.3d at 733 (quoting Harris v. Forklift Sys., Inc.,

510 U.S. 17, 21 (1993)).  "[I]n other words, the conduct must be so severe or pervasive as to

constitute a hostile or abusive working environment both to the reasonable person and the actual

victim" based on the totality of the circumstances.  Id. (internal citations omitted).  "'[S]imple

teasing, offhand comments, and isolated incidents (unless extremely serious)' do not create a

hostile work environment."  Nicholson v. City of Clarksville, 530 F. App'x 434, 442 (6th Cir.

2013) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)).  Courts generally

consider factors such as "the frequency of the discriminatory conduct; its severity; whether it is

physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

interferes with an employee's work performance."  Schelle v. City of Piqua, No. 24-3980, 2025

WL 1592135, at *4 (6th Cir. June 5, 2025) (quoting Clark Cnty. Sch. Dist. v. Breeden, 532 U.S.

268, 270–71 (2001); Burnett v. Tyco Corp., 203 F.3d 980, 982 (6th Cir. 2000)).

Thermo Fisher argues that Deans fails to demonstrate "severe or pervasive" conduct

"[t]hroughout her employment" because she had identified only "a few specific discriminatory

comments."  (ECF No. 30 at PageID 462 (quoting Fasone v. Clinton Twp., No. 97-3267, 1998

WL 165147, at *1 (6th Cir. Apr. 3, 1998)).)  Moreover, the company asserts that it "took prompt,

remedial action" against the discriminatory conduct, "and the comments then stopped."  (Id.)

Finally, Thermo Fisher contends that the harassment Deans experienced in December 2021 is

time-barred as occurring more than 300 days before her April 16, 2024 EEOC charge.  (Id. at

PageID 463.)

In response, Deans contends that, even if the harassment she experienced from other

employees is not sufficiently "pervasive to establish a hostile work environment," Burks' tirade

18

was sufficiently severe to establish one.  (ECF No.34 at PageID 509.)  As to the statute of limitations, she again argues that the continuing violation doctrine saves her claim.  (Id. at PageID 508 n.2.)  Finally, Deans disagrees that Thermo Fisher stopped the harassment, given that, two years later, Burks unleashed a torrent of invective against her and, in the meantime, "multiple team members routinely made derogatory comments about her sexual orientation." (Id. at PageID 509.)

Deans does not describe conduct "so severe or pervasive" to make out a hostile work environment claim as a matter of law.  See Randolph, 453 F.3d at 733.  Her closest showing of severe conduct is the altercation with Burks, but that one incident cannot sustain this claim.  That particular tirade by one of her subordinates, which Thermo Fisher promptly investigated and addressed by firing him, is not sufficiently severe or pervasive.  See Robinson v. Tendercare (Mich.), Inc., No. 07-10212, 2008 WL 11355460, at *13 (E.D. Mich. Aug. 19, 2008) ("If the hostile work environment sexual harassment is committed by a non-supervisory coworker, then the employer is liable for the harassment if it fails to implement prompt and appropriate corrective measures upon receiving actual or constructive notice that the harassment has occurred.").

Because Deans fails to raise a genuine dispute of material fact as to the hostile work environment claim and Thermo Fisher is entitled to judgment as a matter of law, its Motion for Summary Judgment as to this claim is **GRANTED**.

## IV.    Title VII Retaliation

Finally, Deans alleges retaliation under Title VII, arguing that, after she had made multiple complaints about the harassment, her wife's delayed insurance benefits, and Burks'

19

October 16 tirade, she was fired "[w]ithin days," on October 20, 2023, under the company's

Anti-Violence Policy. (ECF No. 1 at PageID 9.)

To state a prima facie Title VII retaliation claim, a plaintiff must show that (1) they

"engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3)

an adverse employment action was subsequently taken against the employee, and (4) there was a

causal connection between the protected activity and the adverse employment action." Laughlin

v. City of Cleveland, 633 F. App'x 312, 315 (6th Cir. 2015) (quoting Niswander v. Cincinnati Ins.

Co., 529 F.3d 714, 720 (6th Cir. 2008)).

Thermo Fisher argues that the but-for cause of Deans' termination was her violation of

the Anti-Violence Policy, not her complaints about insurance or harassment. (ECF No. 30 at

PageID 463–64.) In fact, those complaints occurred years before her termination. (Id. at PageID

464.) Because those events were proximally distant, argues the company, Deans' retaliation

claim must fail. (Id.) Further, the company contends that the October 16, 2023 altercation is an

intervening event that dispels any inference of causation. (Id. at PageID 465 (citing Kenney v.

Aspen Techs., Inc., 965 F.3d 443, 450 (6th Cir. 2020)).) Thermo Fisher argues that its

investigation turned up "multiple statements which described Plaintiff's threats of violence to her

subordinate." (Id.)

Finally, the company relies upon the "honest belief rule" to argue that it "reasonably

relied on particular facts at the time the termination decision was made," even if those facts

could later turn out to be incorrect. (Id. at PageID 465–66 (citing Majewski v. Automatic Data

Processing, Inc., 274 F.3d 1106, 1117 (6th Cir. 2001)).) Applying the honest belief rule, Thermo

Fisher asserts that, "[c]onsidering the consistencies among the [witness] statements about the

language Plaintiff used, her undisputed actions in the meeting, including walking toward Mr.

Burks while directly addressing him [which Deans disputes], and the absence of any reports of potential bias toward Plaintiff, Employee Relations made the recommendation to terminate Plaintiff's employment." (Id. at PageID 466.) Thus, the company argues that its "honest belief [in] the information provided in the investigation in making the termination decision is fatal to Plaintiff's claim of retaliation." (Id. (citing Golden v. Freddy's Frozen Custard & Steakburgers, No. 20-cv-02805, 2022 WL 5237271, at *10 (W.D. Tenn. Oct. 5, 2022)).)

In response, Deans argues that she was fired within a week of reporting Burks' tirade to the company, supporting an inference of causation. (ECF No. 34 at PageID 511.) She reiterates that she did not violate the Anti-Violence Policy. (Id.) Thus, according to Deans, "a reasonable jury could conclude that Defendant decided it was easier to terminate Ms. Deans than to continue to address her complaints about the homophobic harassment from some of its employees." (Id. at PageID 512.)

Under the "honest belief" rule, "so long as the employer honestly believed in the proffered reason" for its termination of an employee, "an employee cannot prove pretext even if the employer's reason in the end is shown to be 'mistaken, foolish, trivial, or baseless.'" Wright, 455 F.3d at 707–08 (citation omitted). "When the 'honest belief' rule is invoked, to establish pretext, 'the plaintiff must allege more than a dispute over the facts upon which his discharge was based. He must put forth evidence which demonstrates that the employer did not "honestly believe" in the proffered non-discriminatory reason for its adverse employment action.'" Tillman v. Ohio Bell Tel. Co., 545 F. App'x 340, 349 (6th Cir. 2013) (citation omitted).

With all allegations taken in the light most favorable to Deans, she nevertheless fails to raise a genuine dispute of material fact as to Thermo Fisher's honest belief that she had violated the Anti-Violence Policy at the time of her firing. Thermo Fisher interviewed at least eight

21

employees, and from those interviews emerged the consistent story that Deans had told her subordinates to "knuck if you buck" and to "meet [her] outside." It is undisputed that multiple witnesses agreed that Deans had walked toward Burks in the heat of the argument. Even if those statements could be shown to be false or biased, Deans offers no evidence to dispute that the company did not honestly rely on those consistent statements in its decision to fire her.

Deans "has not created a genuine issue of material fact as to whether [Thermo Fisher's] proffered reasons for [her] termination were pretext for unlawful retaliation." Bhama v. Mercy Mem'l Hosp. Corp., 416 F. App'x 542, 553 (6th Cir. 2011). Courts do not require that a defendant's decision-making process "be optimal or that it left no stone unturned." Seeger v. Cincinnati Bell Tel. Co., 681 F.3d 274, 285 (6th Cir. 2012). "Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." Id. Here, the undisputed facts show that Thermo Fisher made a reasonable informed and considered decision to fire Deans for what it believed was a violation of the Anti-Violence Policy at the time of her firing.

Because Deans fails to raise a genuine dispute of material fact as to the retaliation claim and Thermo Fisher is entitled to judgment as a matter of law, its Motion for Summary Judgment as to the retaliation claim is **GRANTED**.

## CONCLUSION

For the reasons stated above, the Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** as to Deans' ADA claim, Title VII hostile work environment claim, and Title VII retaliation claim. It is **DENIED** as to Deans' Title VII discrimination claim.

22

**IT IS SO ORDERED,** this 10th day of June, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE